DECISION AND JUDGMENT ENTRY
{¶ 1} Anthony Blevins appeals his conviction for aggravated possession of drugs in violation of R.C. 2925.11(A)(C)(1)(c). He argues that his conviction is against the manifest weight of the evidence because the State failed to prove that his holding of OxyContin for a few seconds constituted "possession" as defined by R.C. 2925.01(K). Because the State need not prove that Appellant possessed the drug for any specific length of time and the evidence supports the jury's finding that Appellant had control over the OxyContin at least momentarily, we affirm Appellant's conviction.
 {¶ 2} In November 2000, Appellant entered Unlimited Home Medical Care and Pharmacy in Portsmouth, Ohio and tendered a prescription for OxyContin to the pharmacist. The pharmacist advised Appellant that the prescription would cost $301.97. Appellant stated that he needed to retrieve the money and would return to pick up the prescription.
 {¶ 3} After Appellant exited the pharmacy, the pharmacist contacted the office of Dr. Frederick Cohn, the physician who had allegedly written the prescription, because the pharmacist suspected the prescription was a forgery. The pharmacist learned that Dr. Cohn had not issued the prescription and then contacted the Portsmouth Police Department.
 {¶ 4} Two officers assigned to the Southern Ohio Law Enforcement Drug Task Force responded to the pharmacist's telephone call. The officers spoke with the pharmacist and then waited for Appellant to return to pick up the OxyContin. When Appellant returned to the pharmacy, Appellant paid the pharmacist for the prescription and the pharmacist gave Appellant the OxyContin. The officers then placed Appellant under arrest.
 {¶ 5} Appellant was charged with illegal processing of a drug document in violation of R.C. 2925.23(B)(1), and aggravated possession of drugs in violation of R.C. 2925.11(A)(C)(1)(c). In November 2002, a jury found Appellant guilty of both charges and the trial court sentenced Appellant to seventeen months incarceration for the illegal processing of a drug document conviction and six years incarceration for the aggravated possession of drugs conviction, to be served consecutively. Appellant filed a timely appeal.
 {¶ 6} In his sole assignment of error, Appellant alleges that his conviction for aggravated possession of drugs is against the manifest weight of the evidence. Appellant does not challenge his conviction for illegal processing of a drug document or the sentences imposed.
 {¶ 7} When considering an appellant's claim that a conviction is against the manifest weight of the evidence, our role is to determine whether the evidence produced at trial "attains the high degree of probative force and certainty required of a criminal conviction." Statev. Getsy, 84 Ohio St.3d 180, 193, 1998-Ohio-533, 702 N.E.2d 866. The reviewing court sits, essentially, as a "`thirteenth juror' and [may] disagree with the fact finder's resolution of the conflicting testimony." State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52,678 N.E.2d 541, quoting Tibbs v. Florida (1982), 457 U.S. 31, 42,102 S.Ct. 2211, 2218, 72 L.Ed.2d 652. The reviewing court must dutifully examined the entire record, weighing the evidence and considering the credibility of witnesses, keeping in mind that credibility generally is an issue for the trier of fact to resolve. State v. Thomas (1982),70 Ohio St.2d 79, 80, 434 N.E.2d 1356; State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus, 227 N.E.2d 212. The reviewing court may reverse the conviction if it appears that the fact finder, in resolving evidentiary conflicts, "`clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Thompkins, 78 Ohio St.3d at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. On the other hand, we will not reverse a conviction if the state presented substantial evidence upon which the trier of fact could reasonably conclude that all essential elements of the offense had been established beyond a reasonable doubt. State v. Eley (1978), 56 Ohio St.2d 169, syllabus,383 N.E.2d 132.
 {¶ 8} R.C. 2925.11(A) provides that, "No person shall knowingly obtain, possess, or use a controlled substance." Appellant contends that the evidence does not support the jury's finding that he violated this statute because Appellant never had the requisite control over the OxyContin to have "possessed" the drug. Appellant contends that the evidence introduced at trial demonstrates that, at most, Appellant had the OxyContin in his hands for a few seconds.[1]
 {¶ 9} R.C. 2925.01(K) defines "possess" or "possession" as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." The State correctly notes that R.C. 2925.11(A) does not require that an individual "possess" a controlled substance for any specified length of time.
 {¶ 10} The evidence introduced at trial demonstrates that Appellant paid the pharmacist and the pharmacist either handed the OxyContin to Appellant or Appellant picked the OxyContin up from the counter. (Tr. at pp. 38, 62.) After this transaction occurred, the officers approached Appellant. (Tr. at p. 38.) The pharmacist testified that Appellant's hands were on the counter when he was arrested, though he does not indicate whether Appellant was holding the medicine. (Tr. at p. 63.) Appellant contends that he had not yet retrieved the OxyContin from the counter when he was arrested. (Tr. at pp. 138-139.) However, both the officers testified that they did not arrest Appellant until he began to walk away from the counter and that he was holding the OxyContin. (Tr. at pp. 51, 84-85, 94-95.)
 {¶ 11} While there is a conflict in the witnesses' testimony, the evidence in this case clearly supports the jury's finding that Appellant possessed the OxyContin for at least a moment in time. There is no need for the State to prove that the possession lasted for any extended period. Therefore, the State satisfied its burden of proof at trial and Appellant's conviction is not against the manifest weight of the evidence. Appellant's sole assignment of error is overruled.
Judgment affirmed.
Evans, P.J., Abele, J.: Concur in Judgment and Opinion.
[1] Although Appellant's assignment of error asserts that the jury's decision was against the manifest weight of the evidence, his arguments themselves reflect a "sufficiency of the evidence" claim. The relevant inquiry in reviewing such a claim is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, citing Jackson v. Virginia (1979), 443 U.S. 307. Under either a "manifest weight" or a "sufficiency of the evidence" inquiry, our conclusion is the same.